26CA0669 Peo in Interest of Gilmore 07-02-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0669
Pueblo County District Court No. 26MH30039
Honorable Gregory J. Styduhar, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Adam Hardy Gilmore,

Respondent-Appellant.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE SULLIVAN
Pawar and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 2, 2026

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Adam Hardy Gilmore appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (CMHHIP) to medicate him against his will.  We affirm.

## I.     Background

¶ 2     Gilmore was admitted to CMHHIP after being found incompetent to proceed on criminal charges.  According to the affidavit and testimony of Dr. Zachary Wickline, the psychiatrist who supervises Gilmore's care and treatment, Gilmore suffers from an unspecified bipolar disorder that causes episodic mood changes, irritable and aggressive mood states, manic behavior, impulsivity, disinhibition, and delusions.  He has a long history of psychiatric hospitalizations and emergency mental health holds.

¶ 3     Before he was deemed incompetent to proceed, Gilmore presented with "extreme anger and rage" and expressed suicidal ideation.  In October 2025, he was admitted to CMHHIP, where he was minimally adherent with treatments and routinely refused medical appointments.  In January 2026, staff began administering Zyprexa and lithium on a ten-day emergency basis in response to concerns about Gilmore's behavior, including screaming in the middle of the night, throwing pebbles and snowballs at staff

windows, swallowing pebbles because he "needed more fiber," throwing juice on the carpet, saying that there was a bomb in the building, and antagonizing other patients and trying to get them to "revolt." After a few days on Zyprexa and lithium, Gilmore's behavior and thought processes improved. Nonetheless, he was unwilling to take medication voluntarily. The district court denied the People's petition to continue involuntary administration of Zyprexa and lithium beyond a ten-day period.

¶ 4 When Gilmore discontinued medication, his concerning behaviors returned and escalated. On March 22, 2026, he scared a nurse by aggressively lunging, pointing a finger in her face, and yelling. He continued yelling even as he was ushered away, and his aggressive and intimidating behavior persisted later in the day. CMHHIP staff once again began administering medication on an emergency basis, and Gilmore's condition once again improved. The People petitioned for a six-month order authorizing the involuntary administration of Zyprexa and lithium, along with laboratory work and testing to monitor possible side effects.

¶ 5 The district court held an evidentiary hearing, where Dr. Wickline testified about each of the four elements required for the

involuntary administration of medication under *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985).[1]  As to Gilmore's interests in refusing medication, Dr. Wickline testified that Gilmore didn't think he needed psychiatric medication and had complained of side effects including (1) blood in his stool; (2) kidney damage; and (3) tiredness or "zonking him out," in addition to other nonspecific complaints.  Dr. Wickline explained that the requested medications were highly unlikely to cause blood in Gilmore's stool; Gilmore's bloodwork, which CMHHIP would continue to monitor, showed no evidence of kidney damage; and although Zyprexa can cause sedation, this side effect tends to improve within a few weeks of initiating treatment.  In light of the minimal nature of the bona fide side effects and the observable improvement in Gilmore's condition

---

[1] When the State seeks to administer antipsychotic drugs to a mentally ill criminal defendant involuntarily so that they can stand trial, a reviewing court applies the Supreme Court's test in *Sell v. United States*, 539 U.S. 166, 178 (2003).  But reviewing courts apply state law tests if the State, as here, seeks to administer antipsychotics involuntarily for a different purpose, including for purposes "related to the individual's dangerousness, or . . . the individual's own interests where refusal to take drugs puts his health gravely at risk."  *Id.* at 181-82.

3

when medicated, Dr. Wickline opined that the benefits of medication outweighed the risks.

¶ 6     Gilmore was present for the majority of Dr. Wickline's testimony but voluntarily left the room after interrupting the proceedings several times to deny swallowing pebbles, encouraging a revolt, having delusions, and needing medication.  He also argued that CMHHIP staff "don't even understand what's going on with [him]"; "they're just drugging [him]"; and he "can't function."  Just before Gilmore left, his attorney warned, "if you leave now, nothing you say can be considered."  Gilmore responded, "Well, that's fine."  He didn't return to the hearing, and his attorney declined to present an argument.

¶ 7     Relying on Dr. Wickline's uncontroverted affidavit and testimony, which the district court found credible, the court found that the People had provided clear and convincing evidence for each of the *Medina* elements.  On appeal, Gilmore challenges the sufficiency of the evidence supporting the court's order.

## II.     Analysis

¶ 8     Gilmore challenges the sufficiency of the evidence for the first and fourth *Medina* elements.  We conclude sufficient evidence

supported the district court's decision that the People had satisfied their burden on both elements.[2]

## A. Applicable Law and Standard of Review

¶ 9    A district court may authorize the involuntary administration of medication to a patient only if the People establish each of the following elements by clear and convincing evidence: (1) the patient is incompetent to participate effectively in the treatment decision; (2) treatment by medication is necessary either to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient causing serious harm to themself or others in the institution; (3) a less intrusive treatment alternative isn't available; and (4) the patient's need for treatment with medication is sufficiently compelling to override their bona fide and legitimate interest in refusing medication. *Medina*, 705 P.2d at 973; *see People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011). A treatment provider's testimony

---

[2] We decline to address Gilmore's challenge, made for the first time in his reply brief on appeal, to the "overly broad spectrum of medications and delivery modalities" that the district court approved. *See In Interest of L.B.*, 2017 COA 5, ¶ 48 ("We do not consider arguments raised for the first time in a reply brief.").

alone may constitute clear and convincing evidence. *See People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992).

¶ 10 When, as here, a patient challenges the sufficiency of the evidence, we review the record as a whole and, viewing it in the light most favorable to the People, determine whether the evidence is sufficient to support the court's decision. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23. We review the court's conclusions of law de novo and defer to its findings of fact if supported by evidence in the record. *People v. Marquardt*, 2016 CO 4, ¶ 8. We also defer to the district court's resolution of evidentiary conflicts and its determinations of witness credibility, the weight of the evidence, and the inferences to be drawn from it. *See People in Interest of R.C.*, 2019 COA 99M, ¶ 7.

B. Sufficient Evidence Supported the First *Medina* Element

¶ 11 Gilmore argues that the evidence offered by the People falls short because the record shows that he has partial insight into his condition. We disagree.

¶ 12 A patient is incompetent to effectively participate in treatment decisions when his "mental illness has so impaired his judgment as

6

to render him 'incapable of participating in decisions affecting his health.'" *Medina*, 705 P.2d at 973 (citation omitted).

¶ 13 Dr. Wickline's affidavit and testimony, which the district court found credible, support the court's findings that Gilmore was incompetent to effectively participate in his treatment decisions. Dr. Wickline's affidavit and testimony established that Gilmore (1) is mentally ill; (2) has "quite limited" insight into his mental illness; (3) doesn't consistently recognize a need for treatment; (4) doesn't take medication for a clinically significant period of time or at appropriate dosages; (5) doesn't think he needs medication and doesn't appreciate that medications play a role in controlling his symptoms; and (6) routinely refuses medical treatment, including physical therapy. This evidence was sufficient to satisfy the first *Medina* element. *See People in Interest of R.K.L.*, 2016 COA 84, ¶ 33 (noting that a patient's inability to realistically assess the benefits of medication supports such a finding).

¶ 14 We aren't persuaded by Gilmore's argument that the court must find otherwise based on his ability to identify plausible side effects and articulate his preference for refusing medication. *See Strodtman*, 293 P.3d at 132 (noting that the first *Medina* element

"contemplates action in addition to words"). And we are similarly unpersuaded that Gilmore's statements during Dr. Wickline's testimony require a different result. We defer to the district court's impressions at the evidentiary hearing and decline to reconsider its assignment of weight to certain evidence and its resolution of evidentiary conflicts. *See R.C.*, ¶ 7. Because the evidence is sufficient to support the court's decision, we will not disturb it. *See Ramsey*, ¶ 23.

C.     Sufficient Evidence Supported the Fourth *Medina* Element

¶ 15     In assessing the sufficiency of evidence for the fourth *Medina* element, a court must determine (1) "whether the patient's refusal is bona fide and legitimate"; and, if so, (2) "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina*, 705 P.2d at 974. Gilmore contends that the district court erred by finding that both prongs favored the involuntary administration of medication. We conclude that the record supports the district court's ultimate finding on this element.

¶ 16    For the purpose of our analysis, we assume that Gilmore's alleged side effects and potential religious objection to taking medication are bona fide and legitimate reasons for his refusal to take Zyprexa and lithium. Even so, Dr. Wickline's testimony and affidavit support the district court's finding that Gilmore's preference must yield to the People's legitimate interests because Gilmore's symptoms worsen when he isn't taking medication, which creates a risk of harm to himself or others in CMHHIP (as described in Part I of this opinion).

¶ 17    Because Dr. Wickline's testimony and affidavit provide clear and convincing evidence for the court's ultimate finding that Gilmore's prognosis without medication is so unfavorable that any bona fide and legitimate interest in refusal must yield to the People's legitimate interests in preserving his health and in protecting the safety of those in CMHHIP, we conclude that the People satisfied the fourth *Medina* element.

III.    Detailed Written Order Not Required

¶ 18    Although Gilmore primarily frames his appeal as a challenge to the sufficiency of the evidence, he also contends that the district court erred by failing to make individualized findings for each

*Medina* element in its written order. We reject this contention for two reasons. First, as exemplified by the findings listed in Parts II.B and II.C above, the court made individualized findings in its oral order at the conclusion of the evidentiary hearing. Second, Gilmore doesn't cite, and we aren't aware of, any legal authority requiring written findings.

## IV. Disposition

¶ 19 We affirm the order.

JUDGE PAWAR and JUDGE MEIRINK concur.